## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY G. FUTURE,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:16-2346** |
| **v.** | : | **(JUDGE MANNION)** |
| **WARDEN TAMMY FERGUSON,** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

Petitioner, Jeffrey Future, an inmate confined in the Forest State Correctional Institution, Marion, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his guilty plea entered in the Court of Common Pleas of Lackawanna County. Id. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.

## I.    <u>Background</u>

The factual and procedural background of this case has been extracted from the Pennsylvania Superior Court's January 11, 2016 Memorandum Opinion, affirming the PCRA court's grant, in part, and denial, in part, of Petitioner' PCRA petition and is as follows:

Jeffrey G. Future appeals from the order entered February 3, 2015, in which the PCRA court granted in part and denied in part his PCRA petition. Specifically, the PCRA court awarded Appellant the right to appeal *nunc pro tunc* from the denial of his original PCRA petition which it had denied by order on June 7, 2013 and denied his remaining claims as untimely. After careful review, we affirm.

On July 30, 2009, Pennsylvania State Police responded to a report of an individual having been shot numerous times who was in the center of a rural roadway, Ransom Road, Lackawanna County. A witness at the scene told police that she saw a sport utility vehicle flee at a high rate of speed upon her approach. The victim, Allen Fernandez, was pronounced dead at the scene. A subsequent autopsy revealed that he had been shot twelve times. Through their investigation, police learned of the possible involvement of Appellant's brother, Tonie Future. Thereafter, in an interview with Pennsylvania State Police, Appellant admitted to taking part in the murder of Mr. Fernandez. Appellant admitted that he used his mother's green Jeep Grand Cherokee to transport the victim to the location where the victim was shot. Police also learned that another male, Christian Kenyon, was involved in the shooting. Appellant, his brother, and Kenyon each fired a weapon at the victim and police located the weapons with the aid of Kenyon. According to a statement by Appellant, they murdered Mr. Fernandez at the behest of another member of the Bloods street gang. Mr. Fernandez was also a member of that gang.

Appellant pled guilty to first-degree murder on January 19, 2010.

\* \* \* \*

The court then sentenced Appellant to life imprisonment without parole and explained his appellate rights.

Appellant did not file a direct appeal, but filed a timely *pro se* PCRA petition, which was docketed on November 10, 2010. Therein, Appellant averred that plea counsel was ineffective for not advising him that he could not represent Appellant in a capital trial and that plea counsel's younger brother was the police chief

- 2 -

of the Scranton City police, which he posited was the arresting agency in this matter. Appellant also alleged counsel was ineffective for not litigating a suppression motion or filing a direct appeal.

The court appointed PCRA counsel on January 12, 2011. Initial PCRA counsel submitted a **Turner/Finley**[1] no-merit letter and petition to withdraw.[2] That letter addressed each of Appellant's claims. The Commonwealth also filed a response to Appellant's *pro se* petition.[3] Therein, the Commonwealth averred that counsel was not required to be death qualified because it had not filed notice of aggravating circumstances, the Pennsylvania State Police was the arresting agency, and Appellant knowingly waived the right to file pre-trial motions. The Commonwealth also erroneously maintained that Appellant's allegation that counsel failed to file a direct appeal was not cognizable under the PCRA.

The PCRA court failed to issue Pa.R.Crim.P. 907 notice of intent to dismiss or issue a final order. However, in an order dated April 11, 2011, it permitted counsel to withdraw.[4] On May 18, 2011, Appellant filed a document seeking his transcripts and other docket entries, maintaining that he could not adequately respond

---

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

[2] The no-merit letter is dated April 8, 2011, but was not docketed until September 18, 2015, well after original PCRA counsel was permitted to withdraw. Thus, it appears that counsel improperly did not contemporaneously file with the PCRA court the no-merit letter and petition to withdraw. **See Commonwealth v. Willis**, 29 A.3d 393 (Pa.Super. 2011) (noting that submitting to the court but not filing a no-merit letter was improper). However, Appellant received the no-merit letter and petition to withdraw as in subsequent filings he acknowledged the April 8, 2011 no merit letter.

[3] The Commonwealth filed its answer before Appellant's counsel submitted his no-merit letter and erroneously labeled it as an answer to an amended petition.

[4] The order was filed on April 12, 2011.

to counsel's no-merit letter, and asking the court to reconsider its order permitting counsel to withdraw. The court, on October 26, 2011, directed the clerk of courts to provide Appellant with those documents, which it did on the following day. Subsequently, on January 31, 2013, Appellant filed a document entitled, "Petition for the Court[']s Assistance." Therein, he pointed out that he had not received a final order denying or granting his petition. Appellant also noted that the Commonwealth had filed a response to his petition, setting forth that counsel was not required to be death qualified. Appellant argued, however, that the Commonwealth agreed not to seek the death penalty in exchange for his plea and that the plea court had placed on the record that he was facing the death penalty on multiple occasions.

In response, the PCRA court appointed new PCRA counsel, Christopher Osborne, Esquire, on February 6, 2013. Attorney Osborne filed a **Turner/Finley** no-merit letter and petition to withdraw on June 4, 2013. PCRA counsel re-addressed the issues Appellant leveled in his pro se petition, except for his claim relative to seeking a direct appeal. Counsel also averred that the issues were adequately addressed in the prior no-merit letter. The PCRA court again failed to file a Rule 907 notice of dismissal and instead, on June 7, 2013, granted second PCRA counsel's petition to withdraw and denied Appellant's petition without a hearing. That final order neglected to inform Appellant of his appellate rights nor does the record reflect that the order was sent by certified mail per the rules of criminal procedure.

Subsequently, on September 20, 2013, Appellant filed an additional PCRA petition. That petition alleged that the Commonwealth unlawfully induced him to plead guilty and breached his plea agreement by not having him housed in a federal penitentiary. He also claimed that his plea was involuntary because the Commonwealth threatened his brother with the death penalty if Appellant did not plead guilty. Also, Appellant alleged that his plea was unlawful because the Commonwealth and his plea counsel indicated that he could face the death penalty when that was untrue. Appellant also submitted for the first time that plea counsel was ineffective in his pre-trial investigations, that the guilty plea colloquy was defective, and

that he was factually innocent because Christian Kenyon admitted killing the victim.

On October 10, 2013, the PCRA court again appointed counsel. Counsel filed an amended petition on February 7, 2014, which alleged that counsel was ineffective in advising Appellant that he would avoid the death penalty by pleading guilty where the Commonwealth had not filed a notice of aggravating circumstances pursuant to Pa.R.Crim.P. 802. Additionally, Appellant argued that his plea was unlawfully induced where the Commonwealth failed to make efforts to have him housed in a federal prison. Lastly, Appellant contended that he was entitled to the *nunc pro tunc* reinstatement of his PCRA appellate rights, relative to the June 7, 2013 order, because he did not receive copies of the second no-merit letter and petition to withdraw or the final order.

The Commonwealth filed an answer, and the PCRA court conducted evidentiary hearings on May 29, 2014 and August 29, 2014. At the conclusion of the hearings, the court agreed that Appellant was entitled to reinstatement of his PCRA appellate rights because he did not receive a copy of the order denying his first PCRA petition but denied his remaining claims as untimely. This appeal ensued. The PCRA court indicated that the reasons for its decision could be found in its memorandum decision in support of its final order. The matter is now ready for this Court's consideration. Appellant presents the following issues for our review:

A.  Whether the Appellant's statutory and/or due process rights were violated by dismissal of his *pro se* Petition for Post Conviction Relief without a hearing since Appellant did not receive notice of either the Motion to Withdraw as Counsel, the "no-merit" letter, or his right to proceed *pro se* prior to dismissal, and genuine issues of material fact existed?

B.  Whether it was an error of law for the PCRA court to dismiss Appellant's *pro se* Petition for Post Conviction Relief since all issues raised in Appellant's pro se Petition

were not addressed and/or properly addressed in PCRA counsel's "no-merit" letter?

C.     Whether the PCRA court violated paragraph one (1) of Pa.R.Crim.P. 907 by summarily dismissing Appellant's *pro se* Petition for Post Conviction Relief prior to conducting its own independent review of the record, without giving Appellant notice of its intention to dismiss, and without giving Appellant an opportunity to respond prior to dismissal?

D.     Whether the PCRA court committed an error of law by dismissing Appellant's *pro se* Petition for Post Conviction Relief since trial counsel provided ineffective assistance at the guilty plea proceedings by giving advice that was not within the range of competence demanded of attorneys in criminal cases?

E.     Whether Appellant's guilty plea was unlawfully induced since it was given to avoid the death penalty even though at the time the guilty plea was entered the death penalty was not applicable at the time?

F.     Whether Appellant's guilty plea was unlawfully induced since trial counsel was not death penalty certified and/or because the Commonwealth failed to provide notice of aggravating circumstances as required by law?

G.     Whether the PCRA Court committed an error of law in denying the arguments made in Appellant's *Nunc Pro Tunc* Petition for Post Conviction Relief as untimely since Appellant's original Petition for Post Conviction Relief was denied without a hearing, notice, an opportunity to respond, or an opportunity to proceed pro se or with new counsel as required by law?

H.     Whether the trial court committed an error of law in denying the claims made in Appellant's *Nunc Pro Tunc* Petition for Post Conviction Relief as being without merit?

- 6 -

> I.   Whether the Commonwealth violated the terms of the plea agreement by failing to give its best efforts to house Appellant in a federal penitentiary and Appellant is entitled to the benefit of the bargain as a result?

Appellant's brief at 4-5.

(Doc. 19-3 at 2-13, Commonwealth v. Future, No. 415 MDA 2015, unpublished memorandum (Pa. Super. filed Jan. 11, 2016)). On January 11, 2016, the Pennsylvania Superior Court addressed Petitioner's first three issues (Claims A-C) raised on appeal, regarding the re-instatement of his appeal rights and found that the PCRA court properly restored Future's right to appeal from the denial of his original PCRA petition. Id. In finding that the PCRA court properly reinstated Petitioner's appeal from his original PCRA petition, the Superior Court dismissed Petitioner's claims regarding PCRA court error (Claims G, H), addressed those claims that were raised in Petitioner's original PCRA petition, (Claims D-F), on the merits and dismissed Petitioner's last claim (Claim I) as untimely and waived because Petitioner did not forward it in his original PCRA petition. Id.

Thereafter, Future timely filed the instant petition pursuant to 28 U.S.C. §2254.

## II.   **Grounds For Relief**

Future asserts the following grounds for relief:

- 7 -

1. The Prosecution obtain[ed] Petitioner's negotiated guilty plea based upon promises not fulfilled by the prosecution, rendering Petitioner's guilty plea involuntary, unknowing and unintelligent.

2. The Prosecution utilize[ed] bargained for consideration it did not possess in exchange for Petitioner's negotiated guilty plea, render[ing] Petitioner's guilty plea involuntary, unknowing and unintelligent.

3. Ineffective assistance of guilty plea counsel.

4. Petitioner's actual innocence and Prosecutorial misconduct inducement of Petitioner's plea to save his brother's life rendered Petitioner's negotiated plea involuntary, unknowing and unintelligent.

(Doc. 1 at 9).

## III.  Legal Standards

### A. Exhaustion and Procedural Default

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") grants to persons in state or federal custody the right to file a petition in a federal court seeking the issuance of a writ of habeas corpus. See 28 U.S.C. §2254. Pursuant to AEDPA:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of applicant.

28 U.S.C. §2254(b)(1). The exhaustion requirement is rooted in considerations of comity, to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509, 518 (1982); Leyva v. Williams, 504 F.3d 357, 365 (3d Cir. 2007); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

Respect for the state court system requires that the habeas petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille, 489 U.S. at 351. To "fairly present" a claim, a petition must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 225, 261 (3d Cir. 1999); see also Nara v. Frank, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis to the state courts). A state prisoner exhausted state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). In Pennsylvania, one complete round includes presenting the federal claim through the Superior

Court on direct or collateral review. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004). The habeas petition bears the burden of proving exhaustion of all state remedies. Boyd v. Waymart, 579 F.3d 330, 367 (2009).

If a habeas petition contains unexhausted claims, the federal district court must ordinarily dismiss the petition without prejudice so that the petitioner can return to state court to exhaust his remedies. Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004). However, if state law would clearly foreclose review of the claims, the exhaustion requirement is technically satisfied because there is an absence of state corrective process. See Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002); Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000). The failure to properly present claims to the state court generally results in a procedural default. Lines, 208 F.3d at 159-60. The doctrine of procedural default bars federal habeas relief when a state court relies upon, or would rely upon, "'a state law ground that is independent of the federal question and adequate to support the judgment'" to foreclose review of the federal claim. Nolan v. Wynder, 363 F. App'x 868, 871 (3d Cir. 2010) (not precedential) (quoting Beard v. Kindler, 558 U.S. 53, 53 (2009)); see also Taylor v. Horn, 504 F.3d 416, 427-28 (3d Cir. 2007) (citing Coleman v. Thompson, 501 U.S. 722, 730 (1991)).

The requirements of "independence" and "adequacy" are distinct. Johnson v. Pinchak, 392 F.3d 551, 557-59 (3d Cir. 2004). State procedural grounds are not independent, and will not bar federal habeas relief, if the state law ground is so "interwoven with federal law" that it cannot be said to be independent of the merits of a petitioner's federal claims. Coleman, 501 U.S. at 739-40. A state rule is "adequate" for procedural default purposes if it is "firmly established and regularly followed." Johnson v. Lee, —— U.S. ——, 136 S. Ct. 1802, 1804, 195 L.Ed.2d 92 (2016) (*per curiam*) (citation omitted). These requirements ensure that "federal review is not barred unless a habeas petitioner had fair notice of the need to follow the state procedural rule," Bronshtein v. Horn, 404 F.3d 700, 707 (3d Cir. 2005), and that "review is foreclosed by what may honestly be called 'rules' ... of general applicability[,] rather than by whim or prejudice against a claim or claimant." Id. at 708.

Like the exhaustion requirement, the doctrine of procedural default is grounded in principles of comity and federalism. As the Supreme Court has explained:

> In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000).

Federal habeas review is not available to a petitioner whose constitutional claims have not been addressed on the merits by the state courts due to procedural default, unless such petitioner can demonstrate: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. Id. at 451; Coleman, 501 U.S. at 750. To demonstrate cause and prejudice, the petitioner must show some objective factor external to the defense that impeded counsel's efforts to comply with some state procedural rule. Slutzker, 393 F.3d at 381 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). To demonstrate a fundamental miscarriage of justice, a habeas petitioner must typically demonstrate actual innocence. Schlup v. Delo, 513 U.S. 298, 324-26 (1995).

**B. <u>Merits Review</u>**

The AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. Woodford v. Viscotti, 537 U.S. 19, 24 (2002); Werts, 228 F.3d at 196. Pursuant to 28 U.S.C. §2254(d), as amended by AEDPA, a petition for habeas corpus may be granted only if: (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United

States;" or (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts, 228 F.3d at 196 (citing 28 U.S.C. §2254(e)(1)).

The Supreme Court has explained that, "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000); see also Hameen v. State of Delaware, 212 F.3d 226, 235 (3d Cir. 2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Hameen, 212 F.3d at 235 (citing Williams, 529 U.S. at 388-89). "In further delineating the 'unreasonable application' component, the Supreme Court stressed that an unreasonable application

- 13 -

of federal law is different from an incorrect application of such law and that a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citation omitted).

## IV. **Discussion**

### A. **Procedurally Defaulted Claims**

Petitioner's Grounds One, Two and Four are unexhausted and procedurally defaulted.

In Ground One, Petitioner claims that the prosecution obtained his guilty plea "based upon promises not fulfilled by the prosecution." (Doc. 1 at 9). Specifically, Petitioner claims that he "was not housed in a federal facility, [his] brother continued to face the death penalty after Petitioner's plea acceptance, and prosecution failed to use best efforts, but to the contrary, acted in direct violation of the terms of the negotiated plea agreement." Id. This claim is procedurally defaulted and will be denied.

As noted above, a petitioner must exhaust his federal constitutional claims in state court before raising them in a federal habeas petition. 28 U.S.C. §2254(b)(1); Castille, 489 U.S. at 349; Rose, 455 U.S. at 518. A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process," which, in Pennsylvania, includes review at least through the Superior Court. O'Sullivan, 526 U.S. at 845; Lambert, 387 F.3d at 233–34. The failure to properly present claims to the state court generally results in a procedural default. Lines, 208 F.3d at 165–66. A federal court is precluded from reviewing the merits of a procedurally defaulted claim if the state courts relied on an independent and adequate state ground to foreclose review of the federal claim. Beard, 558 U.S. at 53.

Here, Petitioner's Ground One is defaulted because he has not presented it through one complete round of Pennsylvania's established appellate review process. O'Sullivan, 526 U.S. at 845. Petitioner raised this claim for the first time in his untimely Amended PCRA petition which, although determined as untimely by the PCRA court under the PCRA statute of limitations, was denied on the merits as follows: "We find no merit in Petitioner's claim that the Commonwealth violated the plea agreement. Since Petitioner discontinued his cooperation with federal officials, the Commonwealth was no long required to continue exercising its best efforts to have Petitioner housed in a federal penitentiary." (Doc. 19-7 at 51).

On appeal, the Superior Court found this claim "untimely and waived because [Petitioner] did not forward it in his original PCRA matter." (Doc. 19-3 at 34). Additionally, the Court found that Petitioner "failed to plead and

prove a timeliness exception relative to his claim that the Commonwealth failed to abide by the plea agreement." Id.

The claim that Petitioner's brother continued to face the death penalty after Petitioner pled guilty was also raised in Petitioner's untimely Amended PCRA petition filed by Petitioner. However, Petitioner failed to raise this claim on appeal to the Superior Court.

Therefore, the claims that encompass Petitioner's Ground One claim have not completed one full round of the State's appellate review process. Accordingly, Petitioner's Ground One claim is unexhausted and procedurally defaulted as Petitioner would now be precluded from raising it under the PCRA statute of limitations and Pennsylvania's PCRA waiver rule, 42 Pa.C.S. §9544(b).[5] The waiver rule codified at §9544(b) is an independent and adequate state rule which bars federal habeas review. Patton v. Sup't Graterford SCI, 2017 WL 5624266, at *1 (3d Cir. 2017) ("[T]he state court's reliance on 42 Pa. Cons. Stat. §9544(b) provides an independent and adequate ground to support the judgment."). Ground One is clearly procedurally defaulted and Future does not allege cause or prejudice. Nor does he allege that lack of review by this court will constitute a fundamental

---

[5] 42 Pa. Cons. Stat. §9544(b) provides: "For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."

miscarriage of justice. Consequently, this claim is foreclosed from habeas review.

Petitioner's Ground Two alleges that the prosecution utilized bargained for consideration that it did not possess, rendering his guilty plea involuntary, unknowing, and unintelligent. (Doc. 9 at 9). Specifically, Petitioner contends that the prosecution did not possess for exchange the death penalty against him as it had been previously waived in exchange for his statement; the power to federal house Petitioner, nor the power to remove the death penalty from his brother's case. Id.

Petitioner's claim that the death penalty had previously waived was only raised in Petitioner's untimely Amended PCRA petition and was not raised in the Superior Court. (See Doc. 19-3 and Doc. 19-7). His claim that the Commonwealth did not have the power to do the things it promised and that his guilty plea was thus unlawfully induced, was not raised in any of Petitioner's PCRA petitions before the state court. Id. Consequently, Petitioner's Ground Two is procedurally defaulted. See McCandless, 172 F.3d at 260. Petitioner does not allege cause or prejudice. Nor does he allege that lack of review by this court will constitute a fundamental miscarriage of justice. Accordingly, habeas review of this claim is foreclosed.

Lastly, Petitioner's Ground Four claims that his "actual innocence and the prosecutorial misconduct inducement of requiring him to plead guilty to

save his brother's life rendered his plea involuntary, unknowing and unintelligent". (Doc. 9 at 9). Specifically, Petitioner contends that the autopsy report and ballistics confirm that he is innocent, that he wanted a trial, and that requiring him to enter a guilty plea to save the life of his brother was an improper inducement and was in fact not required. Id. Lastly, Petitioner again contends that the prosecution waived his death penalty in exchange for his statement months prior to the plea. Id.

Although Petitioner claimed his innocence and that his guilty plea was unlawfully induced by the offer to save his brother's life in his untimely Amended PCRA petition, these issues were not raised in Petitioner's initial PCRA petition, were not addressed by the PCRA court, and most importantly were not raised in Petitioner's state appeals. (See Doc. 19-3 and Doc. 19-7). The same is true for Petitioner's claim that the prosecution had waived the death penalty in exchange for petitioner's statement prior to the plea. Id. Consequently, Petitioner's Ground Four claims have not been exhausted in the state courts. There is no question that the Pennsylvania courts would not entertain the claim at this juncture. Hence, Petitioner's Ground Four claim is procedurally defaulted. See McCandless, 172 F.3d at 260. Future does not allege cause or prejudice. Nor does he allege that lack of review by this court will constitute a fundamental miscarriage of justice. Consequently, habeas review is foreclosed on Grounds One, Two and Four.

**B. <u>Ground Three – Merits Analysis</u>**

Petitioner's Ground Three raises various intertwined claims of ineffective assistance of plea counsel. (Doc. 9 at 9). Specifically, he claims that counsel "was not death penalty certified or experienced, he was unaware of law fundamental to the case, he was ineffective during plea negotiations, and Appellant counsel waived and barred meritorious issues on appeal and review, including the amended PCRA petition was an extension of the original PCRA petition." Id.

To establish an ineffective assistance of counsel claim, a habeas petitioner must show that: (1) trial counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The Strickland test is conjunctive, and a habeas petition must establish both the deficient performance prong and the prejudice prong.[6] See id. at 687; Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010).

---

[6] When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold'." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. Id. at 687–89. This requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104 (2001) (quoting Strickland, 466 U.S. at 687). Indeed, a federal habeas court is "required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons petitioner's counsel may have had for proceeding as he did." Branch v. Sweeney, 758 F.3d 226, 235 (3d Cir. 2014) (quoting Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011)) (alterations omitted).

To establish prejudice in the context of a guilty plea, a petitioner must "show [that] the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 566 U.S. 156, 163 (2012); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985) (requiring a petitioner to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). A petitioner makes this showing by establishing not only that he would not have pleaded guilty and instead would have proceeded to trial if he had been properly advised, but also that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

The Superior Court stated that the proper standard governing ineffective assistance of guilty plea counsel claims as follows:

> "To plead and prove ineffective assistance of counsel a petitioner must establish:  "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." Commonwealth v. Stewart, 84 A.3d 701, 706 (Pa. Super. 2013) (_en banc_). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. **Id**.
>
> A claim has arguable merit where the factual predicate is accurate and "could establish cause for relief." **Id**. at 707. A determination as to whether the facts asserted present a claim of arguable merit is a legal one. **Id**. In considering whether counsel acted reasonably, we do not use a hindsight analysis; rather, an attorney's decision is considered reasonable if it effectuated his client's interests. **Id**. Only where "no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success[,]" will counsel's strategy be considered unreasonable. **Id**. Finally, actual prejudice exists if "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." **Id**. It is presumed that counsel renders effective representation.

(Doc. 19-3, at 22). The Third Circuit has specifically held that the very ineffectiveness assistance of counsel test relied upon by the Superior Court in this matter is not contrary to the Supreme Court's Strickland standard. See Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Thus, we find that the Superior Court's decision is not contrary to Strickland.

Petitioner's claim of ineffective assistance of counsel begin with the contention that his guilty plea was involuntary, unknowing, and unintelligent.

With regard to a challenge to a guilty plea in a federal habeas action, our Supreme Court has stated the following:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989). See also Lesko v. Lehman, 925 F.2d 1527, 1537 (3d Cir. 1991). The voluntariness of a plea can only be determined by considering all of the relevant circumstances surrounding it. Brady v. United States, 397 U.S. 742, 749 (1970).

The Pennsylvania Superior Court applied the following similar standard of review:

> Where a petitioner alleges that guilty plea counsel was ineffective, he must demonstrate that absent counsel's incorrect advice or failure to advise, there is a reasonable probability he would have not have pled guilty and would have proceeded to trial, Commonwealth v. Barndt, 74 A.3d 185 (Pa.Super. 2013), or, not relevant here, accepted a plea offer. In examining whether such prejudice exists in the context of a guilty plea, we look to whether the plea is knowing, intelligent, and voluntary. Commonwealth v. Anderson, 995 A.2d 1184, 1192 (Pa.Super. 2010) ("Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea."); Commonwealth v. Bedell, 954 A.2d 1209, 1212 (Pa.Super. 2008). In determining whether a plea was knowing, intelligent, and voluntary, we consider the totality of the

circumstances. **Commonwealth v. Allen**, 732 A.2d 582, 587 (Pa. 1999); **id**. at 589.

(Doc. 19-3, at 22).

In this case, the findings and rulings by the trial court and the Superior Court with respect to the voluntariness of Petitioner's plea were sound and based upon on the admissions of Petitioner made at the time of his plea and bolstered by volunteered admissions that he made during the course of his sentencing. In rendering its decision on the voluntariness of Petitioner's guilty plea, the Superior Court found the following:

> Appellant pled guilty to first-degree murder on January 19, 2010. Initially, Appellant expressed reluctance at entering his plea and set forth that he desired to proceed to a trial. The court noted that it had previously given Appellant approximately a month to consider the Commonwealth's plea offer and that Appellant was free to change his mind regarding entering a plea, but it would not accept a guilty plea if he elected not to enter a plea that day. The court expressed frustration at Appellant manipulating the court and sheriff's office, since on a prior occasion he had decided not to enter an agreed-upon plea. Nonetheless, the court explained that it had been comfortable giving Appellant five weeks to consider the plea offer. It then asked Appellant if he had enough time to review his own inculpatory statements and other documents with his attorney. The court indicated that it wanted "to make sure you are not doing this because you feel somehow you are not adequately informed. You had enough time to meet with counsel? You had enough time to review the evidence [in] this case?" N.T., 1/19/10, at 5.

> After Appellant stated that he needed more time to consult with his attorney, the court took a recess and permitted Appellant to review the matter with his counsel for an additional two hours. Counsel also placed on the record that he had reviewed

Appellant's statements with him for a total of three hours during two earlier prison visits.

Following his consultation with counsel, Appellant agreed to enter his plea. Before doing so, both his attorney and the court colloquied him. Appellant's attorney queried Appellant as follows.

Attorney: Last time we were here it was about two hours ago. Since then, we have had time to discuss your case and answer any question that you had in a cell down in the basement, right?

Appellant: Yes.

Attorney: Did I answer any questions or any concerns that you had?

Appellant: Yes.

Attorney: Were you able to review any documents that you wanted to review?

Appellant: Yes.

Attorney: You basically reviewed a couple of the documents, but did I discuss with you that I thought this was probably in your best interest - - not probably, but this is in your best interested [sic] to plead guilty?

Appellant: Yes.

Attorney: Did I threaten you or coerce you or cause you to make this plea?

Appellant: No.

Attorney: Are you doing this of your own free will?

Appellant: Yes.

N.T., 1/19/10, at 13-14. Thereafter, the plea court conducted its own colloquy and reviewed a written guilty plea colloquy that

Appellant had reviewed and initialed. The court explained that Appellant had an absolute right to a jury trial and by pleading guilty he would be giving up certain rights. It pointed out that he was presumed innocent and the burden of proof at trial rested on the Commonwealth. The court explained the concept of reasonable doubt and that the prosecution would have to establish each element of the charges beyond a reasonable doubt and that the jury's verdict must be unanimous.

In addition, the court informed Appellant that he had the right to present his own witnesses as well as cross-examine any Commonwealth witnesses, but he was not required to testify or present a defense. The court also set forth the manner in which a jury would be selected, noting that the matter was a death penalty case. At that time, however, the Commonwealth had not provided notice of any aggravating circumstances and apparently, plea counsel was not "death qualified" to try the matter.

The court further discussed Appellant's right to litigate pre-trial motions and that, by pleading guilty, any issues he could litigate on appeal would be limited. Since Appellant had been on parole at the time of his commission of the crime herein, the court also explained that by pleading guilty he was admitting to violating his parole and that he could be sentenced to complete his parole sentence. The court also defined first-degree murder and asked Appellant to repeat the definition to demonstrate that he understood. With respect to the actual plea agreement, the court set forth that the Commonwealth was agreeing to "abandon any efforts to get the death penalty. In addition to that they have agreed that your brother would also not face the death penalty if he agrees to enter a plea of guilty." Id. at 33.

The court continued by placing on the record that the Commonwealth also had agreed to make efforts to place Appellant in federal custody for protective reasons and not state

prison.[7] The Commonwealth indicated on the record that it agreed with the court's recitation of the agreement.

Appellant submitted again that he had not been threatened to enter the plea and that he was freely and voluntarily pleading guilty. He also acknowledged the maximum penalty and fine, and that he faced a mandatory sentence of life imprisonment without parole. The court then recited the underlying fact that Appellant, with specific intent, shot and killed Allen Fernandez. Appellant admitted to the crime.

The court accepted Appellant's plea, placing on the record that it reviewed a presentence investigative report and that it had no discretion to sentence Appellant to anything other than life imprisonment without parole, but felt that such a sentence was appropriate. Appellant apologized to the victim's family, accepted full responsibility, and offered advice to parents to prevent their kids from falling for the "psychological trickery" of the gang lifestyle. N.T., 1/19/10, at 45. The court then sentenced Appellant to life imprisonment without parole and explained his appellate rights.

(Doc. 19-3 at 3-7).

This Court agrees with the Pennsylvania Superior Court's finding that the Petitioner's plea was voluntary and that the plea colloquy was adequate. Section 2254(e) "establishes a presumption of correctness" of state-court factual decisions which the applicant has the burden of rebutting with "clear and convincing evidence." 28 U.S.C.S. §2254(e). In this case, Petitioner's

---

[7] The record contains subsequent filings in which the Commonwealth indicated that Appellant had elected not to cooperate with federal investigators and that he should be moved to state prison. Appellant testified at his PCRA hearing that cooperation with federal authorities was not part of the plea agreement, and the record of the plea hearing supports his position.

unsupported assertion that counsel was unaware of law fundamental to the case and was ineffective during plea negotiations does not meet the threshold of "clear and convincing evidence" that the plea he gave prior to being sentenced was involuntary. Additionally, the state court ruling was fairly supported by the record as required by Section 2254(d). Thus, Petitioner's claim regarding the alleged involuntariness of his guilty plea will be denied on the merits.

Petitioner argues that counsel was ineffective for failing to comply with Pennsylvania Rules of Criminal Procedure Rule 801[8] and Rule 802.[9] The Superior Court addressed this issue on the merits, finding that the fact that plea counsel was not death penalty certified did not render him ineffective. (Doc. 19-3 at 32). The Court reasoned that "if the Commonwealth had [] filed a notice of aggravating circumstances, Petitioner would have been constitutionally entitled to capital counsel." Id. However, "[t]he absence of

---

[8] Pennsylvania Rules of Criminal Procedure Rule 801 states that "before an attorney may participate in any stage of [a capital case] either as retained or appointed counsel, the attorney must meet the educational and experiential criteria set forth in [the] rule." Pa.R.Crim.P. 801.

[9] Pennsylvania Rules of Criminal Procedure Rule 802 states that "[t]he attorney for the Commonwealth shall file a Notice of Aggravating Circumstances that the Commonwealth intends to submit at the sentencing hearing and contemporaneously provide the defendant with a copy of such Notice of Aggravating Circumstances. Notice shall be filed at or before the time of arraignment or the time for filing is extended by the court for cause shown." Pa.R.Crim.P. 802.

death qualified counsel in this matter was not *per se* prejudicial," finding that "all the prongs of the **Strickland/Pierce** ineffectiveness standard must be demonstrated." Id. The Court finds that the Superior court reasonably applied Strickland in holding that plea counsel was not deficient under the Strickland test. Accordingly, we find that Petitioner has failed to establish that his plea counsel's actions were unreasonable and that, but for counsel's alleged error, Petitioner would have insisted on going to trial.  Thus, the Court denies relief on this claim.

Finally, to the extent that Petitioner claims that PCRA counsel was ineffective, such a claim is not cognizable in a federal habeas petition. Petitioner did not have a federal constitutional right to counsel during his PCRA proceeding, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); therefore, he cannot receive habeas relief on a stand-alone claim that his PCRA counsel was ineffective. See 28 U.S.C. §2254(i) ("[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254"); Coleman, 501 U.S. at 752-53 ("There is no constitutional right to an attorney in state post-conviction proceedings.... Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")

## V.    Certificate of Appealability

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" Tomlin v. Britton, 448 Fed.Appx. 224, 227 (3d Cir. 2011) (citing 28 U.S.C. §2253(c)). "Where a district court has rejected the constitutional claims on the merits, ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

For the reasons set forth herein, Petitioner has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that Court's assessment of the claims debatable or wrong. Accordingly, a COA will not issue.

## VI.   <u>Conclusion</u>

For the reasons set forth above, the Court will deny the petition for writ

of habeas corpus. A separate order shall issue.


<u>*s/ Malachy E. Mannion*</u>
**MALACHY E. MANNION**
**United States District Judge**

**DATE: June 27, 2022**

16-2346-01